UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SIMS,

        Petitioner,                        Case Number: 2:14-CV-12754

v.                                             HON. DENISE PAGE HOOD

STEVEN RIVARD,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

     Michigan state prisoner John Sims has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is presently incarcerated at the G. Robert Cotton Correctional Facility, in Jackson, Michigan, challenges his convictions for two counts of first-degree murder, assault with intent to murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm. He argues that habeas relief should be granted because the prosecution did not exercise due diligence to secure an eyewitness's presence at trial, the trial court erred in instructing the jury on aiding and abetting, and the trial court erred in re-opening the prosecution's proofs before Petitioner presented his case. Respondent argues that the claims should be denied because they are without merit and/or not cognizable on federal habeas review. For the reasons discussed, the Court denies the petition and denies a certificate of appealability.

I.   Facts

Petitioner's convictions arise from a shooting that occurred on Parkgrove Street in Detroit during the early morning hours of May 26, 2011.  Marcell Riddle and James Griggs were each struck by numerous bullets and killed, and Lendale Griggs sustained a gunshot wound.  The prosecution presented testimony that Petitioner, who was angry over a relationship between Riddle and Davina Britton (Petitioner's ex-girlfriend), fired an assault rifle at Riddle.

Lendale Griggs testified that, on the night of the shooting, he drove to Glenwood Street in Detroit and found his brother James, Marcell Riddle, and Petitioner standing together.  Landale testified that he sensed tension between Riddle and Petitioner, though he did not hear any harsh words exchanged.  Lendale, James, and Riddle then drove around the corner to shoot dice on Parkgrove Street.  Riddle was still sitting the car and Lendale and James were standing beside the car when an individual he identified as Petitioner began firing an assault rifle in their direction.  He testified that there was also another, unknown man at the scene with a handgun.  When he heard the gunshots, Lendale Griggs fled the scene.  As he fled the scene, he was struck in the back of the leg by a bullet.

Dominic Baldwin could not be located at the time of trial.  The trial court, therefore, allowed his preliminary examination testimony to be presented to the jury.  Baldwin testified that he was present during the shooting.  Earlier that night, he heard Petitioner and Riddle discuss a woman, but did not hear either man threaten the other.  At

the time of the shooting, Baldwin saw Riddle sitting in his vehicle, and James Griggs standing beside the vehicle. Baldwin saw Petitioner standing across the street, firing an AK-47 in the direction of Riddle's car.

Davina Britton testified that she and Petitioner have a child, who was born in 2008. Petitioner left the Detroit area in 2009 and was gone for approximately two years. In his absence, Britton became involved with Marcel Riddle. When Petitioner returned to the Detroit area in 2011, she resumed her relationship with him and was no longer involved with Riddle. She testified that Petitioner was not happy that she had been in a relationship with Riddle. A few days before the shooting, Britton was in the car when she received a phone call from Riddle. While Britton was on the phone with Riddle, Petitioner commented that he was "going to end up killing somebody." Tr., 12/19 at 70.

Police arrested Petitioner several hours after the shooting. Petitioner was standing in the driveway of a house located at 13930 Fordham in Detroit, when police arrested him. Police later obtained a search warrant for the house and found an AK-47-type rifle and a .380 caliber handgun in a piece of luggage lying under a fallen fence at the property. Inside the house, police found a similar piece of luggage containing ammunition clips for an AK-47-type rifle. An expert witness testified that the cartridges found at the scene of the shooting were fired from the rifle found at the Fordham residence. Police Sergeant William Hart testified that he had concluded that Petitioner lived at the Fordham address. The prosecution then rested and the trial was adjourned for the day. The next morning, before the defense began its case, the prosecution moved to

reopen the proofs to present evidence of a Secretary of State document, which listed Petitioner's residence as 13930 Fordham.

The defense presented testimony from two police officers. The first testified that as he was responding to reports of a shooting, he stopped Dominic Baldwin, who was running from the scene. Baldwin initially denied witnessing the story, but later changed his story. The second officer testified that his police report listed three suspects. Petitioner did not testify in this own defense.

## II.     Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of two counts of first-degree murder, assault with intent to commit murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm. On January 19, 2012, he was sentenced to life imprisonment for each of the two counts of first-degree murder, 15 to 32 years' imprisonment for assault with intent to murder, 2-1/2 to 5 years' imprisonment for possession of a firearm, and 5 years' imprisonment for felony firearm.

Petitioner filed an appeal of right in the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Sims*, No. 308711, 2013 WL 1629415 (Mich. Ct. App. Apr. 16, 2013). Petitioner sought and was denied leave to appeal in the Michigan Supreme Court. *People v. Sims*, 495 Mich. 866 (Mich. Sept. 30, 2013).

Petitioner then filed the pending habeas petition. He raises these claims:

    I.      Due diligence, Mich. R. Evid. 804(a)(5) – the prosecution failed to show due diligence in not producing eyewitness at trial where such witness was linchpin to case.

    II.      Abuse of discretion in overruling defense objection to a jury instruction on aiding and abetting – evidence was insufficient to support aiding and abetting.

    III.      Abuse of discretion in overruling the defense objection to the reopening of the prosecution's proofs and admission of document that was never in discovery as evidence.

**III.  Standard**

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.
>
> 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. … The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)) (citing *Williams*, 529 U.S. at 409). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (internal quotation and citation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. However, this "does not require citation of [Supreme Court] cases - indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Relatedly, "while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Finally, a federal habeas court must presume the correctness of state court factual determinations, see 28 U.S.C. § 2254(e)(1), and a petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Put differently, only factual determinations that are "objectively unreasonable in light of the evidence presented in the state-court proceeding" will be overturned. *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**IV.  Analysis**

    **A.  Admission of Missing Witness's Preliminary Examination Testimony**

Petitioner's first claim for habeas corpus relief concerns the admission of Dominic Baldwin's preliminary examination testimony. Baldwin could not be located at the time of trial and there was evidence that he fled the state because he was fearful of testifying. The trial court held that the prosecution made a good faith effort to secure Baldwin's presence at trial and admitted his preliminary examination testimony. Petitioner argues that the trial court erred in admitting this testimony because the prosecution failed to show due diligence under Michigan Rule of Evidence 804. On direct appeal in state court, Petitioner also raised this claim as an allegation Confrontation Clause violation. Petitioner does not specifically do so in his habeas petition, but, because the Court construes *pro se* pleadings liberally, the Court will construe the petition as presenting a claim that the admission of Baldwin's preliminary examination testimony violated the Confrontation Clause.

The argument that the prosecution violated Michigan Rule of Evidence 804 when it failed to secure Baldwin's presence does not allege a claim cognizable on federal habeas review. The alleged failure to comply with state law does not amount to an actionable claim on habeas review. *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41(1984). The Court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Petitioner's argument that the admission of the preliminary examination testimony violated his rights under the Confrontation Clause is meritless. The United States

8

Constitution's Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The right to a trial by jury is based on the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'" *Id*. at 405 (quoting *Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)).

The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). First, Petitioner appears to challenge the trial court's finding that Baldwin was unavailable because, he argues, the prosecution did not make a good-faith effort to obtain his presence at trial. Under federal law, "a witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness"; "the prosecution bears the burden of establishing this predicate." *Ohio v. Roberts*, 448 U.S. 56, 74-75 (1980),

abrogated on other grounds by *Crawford*, 541 U.S. 36.

> Under Michigan law, the requirement is the same:
>
> The declarant is unavailable when he is absent from the hearing and the proponent of his statement has used due diligence to procure his attendance. MRE 804(a)(5). The party wishing to have the declarant's former testimony admitted must demonstrate that it made a reasonable, good-faith effort to secure the declarant's presence at trial. The test does not require a determination that more stringent efforts would not have procured the testimony.

*Sims*, 2013 WL 1629415 at *1.

Applying this due diligence standard, the Michigan Court of Appeals held that the prosecution exercised due diligence in attempting to locate Baldwin, relying on this evidence: Sergeant Hart testified that his team attempted to secure Baldwin's presence at trial for months prior to the trial date; Baldwin was subpoenaed for the original trial date; when the trial was rescheduled, police instructed Baldwin that he remained under subpoena for the rescheduled date; once contact was lost with Baldwin shortly before trial commenced, police made numerous attempts to reestablish contact; and, when contact was reestablished a few days before trial, Baldwin assured police that he would appear for trial; finally, when Baldwin did not appear on the first day of trial, police made significant efforts to locate him. *Id.*

This Court cannot say that the Michigan Court of Appeals' decision that the prosecutorial team acted with due diligence to secure Baldwin's presence at trial was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. The Supreme

10

Court has held that "[t]he lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *Roberts*, 448 U.S. at 74. The record supports a finding that the prosecution acted with reasonable diligence in this case.

Second, the Court considers whether the second prong of *Crawford*, a "prior opportunity for cross-examination" was satisfied by Baldwin's testimony at the preliminary examination. The Michigan Court of Appeals held that it was. *Sims*, 2013 WL 1629415 at *2. The Sixth Circuit Court of Appeals has acknowledged "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x. 435, 437 (6th Cir. 2010) (citing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted). But, the Sixth Circuit Court of Appeals has further observed that "because there is room for reasonable debate on the issue," a state court's decision that a preliminary examination satisfies the "opportunity for cross-examination" requirement, "is necessarily beyond [a federal court's] power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014)). Because there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1), the Court denies habeas relief on this claim.

11

### B. Jury Instruction on Aiding and Abetting

Petitioner argues that the trial court erred in instructing the jury that Petitioner could be convicted under an aiding and abetting theory when the prosecutor presented insufficient evidence to support that theory.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)*,* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 597 N.W.2d 130, 135 (1999). An

"aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992). Further, "[t]he intent to kill may be transferred to an unintended victim." *Sims*, 2013 WL 1629415 at *2, citing *Lawton*, 196 Mich. App. at 350-51.

The Michigan Court of Appeals held that the evidence amply supported a first-degree murder instruction under an aiding and abetting theory. The state court reasoned:

> In this case, the prosecution's theory was that there were two shooters during the Parkgrove shooting. One shooter, Joe Joe, had a gambling dispute with James Griggs and the other shooter, defendant, was upset with Riddle over a relationship. There was evidence that multiple weapons were discharged, a handgun and a rifle. There is also eyewitness testimony that there were two shooters on scene. The testimony was that the two men appeared at almost the same time each silently discharging weapons in the same direction. Their coordinated efforts indicate conduct sufficient to induce and aid the other person. ... A jury could infer shared intent to murder from this evidence, which would support both of the homicide charges and the assault charge. Accordingly, the evidence supported a theory of aiding and abetting.

*Id.*

Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975). Where a state appeals court finds that the instruction given by the trial court accurately reflected state law, this Court must defer

13

to that determination. *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000). Because the Michigan Court of Appeals determined that it was proper for the trial court to give the jury an instruction on aiding and abetting, and Petitioner has not shown that holding was unreasonable, he is not entitled to habeas relief on this claim.

### C.     Reopening of Prosecution's Proofs

Finally, Petitioner argues that the trial court erred in reopening the prosecution's proofs before commencement of the defense's case to allow the prosecution to introduce a document from the Secretary of State's Office establishing Petitioner's residence on Fordham Street.

This claim raises question only of state law. "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)). The Michigan Court of Appeals held that the trial court did not abuse its discretion in reopening the prosecution's proofs to admit the proof-of-address document from the Secretary of State. *Sims*, 2013 WL 1629415 at *3. The trial court held that the delay in presenting this document was "mere oversight, not an attempt to blindside the defense." *Id.* The document simply confirmed a fact for which supporting evidence was already in the record. *Id.* The state court held that Petitioner did not establish surprise or prejudice from the introduction of this document. *Id.*

Petitioner has failed to show that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent.  Nor has he shown that the trial court's decision implicated his fundamental right to a fair trial.  Therefore, habeas relief is denied on this claim.

## V.     Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

**VI.  Conclusion**

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

          S/Denise P. Hood
          DENISE PAGE HOOD
          UNITED STATES DISTRICT JUDGE

DATE: December 31, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 31, 2015, by electronic means and/or ordinary mail.

          s/K. Jackson
          CASE MANAGER
          (313) 234-5014